■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RONALD BROWN, Appellant. [835 NYS2d 451]—

Rose, J. Appeal from a judgment of the County Court of Schenectady County (Catena, J.), rendered September 17, 2004, upon a verdict convicting defendant of the crimes of sexual abuse in the first degree, sexual abuse in the third degree and endangering the welfare of a child.

Based upon allegations that defendant had raped and sexually abused a 15-year-old female victim while she was babysitting his son at his home, he was interrogated and ultimately confessed to some of the sexual contacts alleged by the victim. Although defendant later recanted and argued at the *Huntley* hearing, without testifying, that he had been coerced into

confessing, County Court (Eidens, J.) denied suppression. At trial, defendant testified that he had not touched the victim in any way and that his inculpatory statements had been coerced by the threat that his son would be placed in foster care if he did not confess. The jury, however, found him guilty of sexual abuse in the first and third degrees and endangering the welfare of a child. He now appeals.

Citing his trial testimony, defendant asserts that the interrogating police officers refused to let him see his two-year-old son at the police station and told him that he could go home with his son if he gave a statement, but that his son would be placed in foster care if he did not do so. We, however, are not persuaded that his confession was coerced. The test for determining when police tactics render a confession involuntary is whether "the deception [is] so fundamentally unfair as to deny due process or that a promise or threat was made that could induce a false confession" (*People v Tarsia*, 50 NY2d 1, 11 [1980] [citations omitted]). The issue is a factual one governed by the totality of the circumstances (*see People v Anderson*, 42 NY2d 35, 38-39 [1977]; *People v Van Guilder*, 29 AD3d 1226, 1227 [2006]), and the suppression court's determination, resting largely upon an assessment of the credibility of the testifying officers, is entitled to deference (*see People v Mateo*, 2 NY3d 383, 414 [2004], *cert denied* 542 US 946 [2004]; *People v Davis*, 18 AD3d 1016, 1017 [2005], *lv denied* 5 NY3d 805 [2005]).

Here, at the *Huntley* hearing and at trial, police officers testified that defendant went voluntarily to the police station and his son went too because there was no one to care for him at home, that defendant had been given *Miranda* warnings before questioning began, he had waived his right to an attorney and he had initiated the discussion about what would happen to his son. Although the officers told defendant that his son would be kept at the station until either defendant was released or a relative appeared to care for his son, they denied that any threats were made to place his son in foster care unless he confessed. Both the suppression court and the jury found the officers to be credible witnesses, and we discern no reason to reject their findings as to the admissibility and voluntariness of defendant's confession (*see People v Graham*, 27 AD2d 203, 204 [1967], *affd* 27 NY2d 616 [1970]).

Defendant next contends that it was error to permit the victim to testify about an uncharged incident when, on the day prior to the alleged sexual abuse, defendant allegedly kissed her, slapped her buttocks and said, "I'll find out what that is all about" after seeing the word "Bootylicious" written on the seat of her

pants. County Court (Catena, J.) permitted this testimony, with appropriate limiting instructions to the jury, because it found the information to be relevant background and as showing "what's going on in the defendant's mind." While evidence of such uncharged conduct would not be admissible here to prove defendant's amorous design because it was not needed to resolve any ambiguity as to consent or to corroborate the young victim's account (*see People v Lewis*, 69 NY2d 321, 327-328 [1987]), nonetheless, we agree that it is probative and admissible as a threat expressing defendant's future intention to have sexual contact with her (*see People v Jackson*, 29 AD3d 409, 410-411 [2006], *affd* 8 NY3d 869 [2007]). In any event, even if it were error to admit the victim's testimony about the prior incident, the error would be harmless. Given defendant's confession, the victim's detailed testimony, and the corroborating evidence, "there was no significant probability the jury would have acquitted defendant if not for the error" (*People v Jackson*, 8 NY3d 869, 871 [2007]).

Next, we are unpersuaded by defendant's claim that his conviction of sexual abuse in the first degree was not supported by legally sufficient evidence. To convict, the People had to prove that defendant engaged in sexual contact with the victim by forcible compulsion (*see* Penal Law § 130.35 [1]). "Forcible compulsion" is defined, in part, as compelling another "by either . . . use of physical force; or . . . a threat, express or implied, which places a person in fear of immediate death or physical injury to himself, herself or another person" (Penal Law § 130.00 [8]). Viewed in a light most favorable to the People, we find the victim's detailed account of the physical contact, the medical evidence of vaginal bruising, the place where the incident occurred, the victim's age, and the relative sizes and strengths of the victim and defendant established every element of the crimes charged beyond a reasonable doubt (*see People v Garcia*, 13 AD3d 818, 819 [2004]; *People v Sehn*, 295 AD2d 749, 750-751 [2002], *lv denied* 98 NY2d 732 [2002]; *People v Miller*, 226 AD2d 833, 836 [1996], *lv denied* 88 NY2d 939 [1996]).

Finally, to the extent that defendant points to inconsistencies in the victim's testimony, we find them to be inconsequential (*see e.g. People v Tarver*, 292 AD2d 110, 114 [2002], *lv denied* 98 NY2d 702 [2002]) and to present a credibility issue which the jury resolved in favor of the victim (*see People v Campbell*, 17 AD3d 925, 926 [2005], *lv denied* 5 NY3d 760 [2005]; *People v Ortiz*, 16 AD3d 831, 833 [2005], *lv denied* 4 NY3d 889 [2005]). Thus, with respect to all of defendant's convictions, after " 'weigh[ing] the relative probative force of conflicting testimony

and the relative strength of conflicting inferences that may be drawn from the testimony' " (*People v Bleakley*, 69 NY2d 490, 495 [1987], quoting *People ex rel. MacCracken v Miller*, 291 NY 55, 62 [1943]), we cannot say that the verdict was against the weight of the evidence.

Crew III, J.P., Peters, Mugglin and Lahtinen, JJ., concur. Ordered that the judgment is affirmed.