## Supreme Court, Appellate Division
## Third Judicial Department

Decided and Entered:  November 5, 2015                    106586
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                    Respondent,

        v                                    MEMORANDUM AND ORDER

JAMES NEAL, Also Known as BIG,
                    Appellant.
_____

Calendar Date:  September 11, 2015

Before:  McCarthy, J.P., Egan Jr., Lynch and Clark, JJ.

_____

        G. Scott Walling, Schenectady, for appellant.

        Kathleen B. Hogan, District Attorney, Lake George (Jason P.
Weinstein, New York Prosecutors Training Institute, Inc., Albany,
of counsel), for respondent.

_____

Clark, J.

        Appeal from a judgment of the County Court of Warren County
(McKeighan, J.), rendered December 18, 2013, convicting defendant
upon his plea of guilty of the crime of robbery in the second
degree.

        In April 2013, defendant and several other individuals
forcibly entered a motel room and stole drugs, electronics,
jewelry and money from the women and children who were staying
there.  A witness who was at the motel at the time of the robbery
was shown a photo array by an investigator from the State Police
in May 2013 but was unable to identify defendant.  Approximately
one month later, the witness was shown a second photo array —
this one containing an older photo of defendant that more closely

comported with the description of the alleged suspect[1] – and the witness identified defendant as someone she had observed at the robbery. Defendant was thereafter arrested in New York City and was driven upstate by State Police for arraignment. While en route, defendant agreed to provide a written statement to the police and was given Miranda warnings. A grand jury thereafter handed down a 25-count indictment charging defendant and five other individuals with various crimes associated with the April 2013 robbery.

In his omnibus motion, defendant sought preclusion of the witness identification and suppression of his written statement made to the State Police. After a combined Wade/Huntley hearing, County Court denied defendant's motion determining that the photo lineup was not unduly suggestive and that defendant's statement to the police was voluntary. Defendant thereafter pleaded guilty to robbery in the second degree in full satisfaction of all the charges against him and was sentenced, as a second felony offender, to a prison term of seven years, to be followed by five years of postrelease supervision. Defendant now appeals and we affirm.

Initially, defendant's contention that the photographic identification procedure was unduly suggestive is unpreserved for our review since he failed to raise at the suppression hearing the specific grounds upon which he now challenges the procedure (see CPL 470.05 [2]; People v Acevedo, 84 AD3d 1390, 1390 [2011], lv denied 17 NY3d 951 [2011]; see also United States v Wade, 388 US 218 [1967]). By not filing an appropriate postallocution motion to withdraw his plea, defendant likewise failed to preserve his challenge to the factual sufficiency of his plea (see People v Lopez, 71 NY2d 662, 665-666 [1988]; People v Martin, 125 AD3d 1054, 1054 [2015], lv denied 26 NY3d 932

---

[1]   The first photo array contained a more recent picture of defendant taken just prior to his release from prison and depicted him as noticeably thinner and with short hair. The second photo array depicted an older photo of defendant in which he appeared much heavier and with longer hair.

[2015]).[2]

Defendant next argues that the written statement that he provided to the State Police after his arrest should have been suppressed on the ground that it was involuntary because, while being transported from New York City to the State Police barracks in the Town of Greenwich, Washington County — nearly four hours away — he was forced to ride in the back of the police car and was handcuffed, and he provided the statement only after the police promised to help him obtain reasonable bail. A confession or written statement admitting guilt is inadmissible as involuntarily made when it is obtained by, among other things, the use of "undue pressure" or "by means of any promise or statement of fact, which promise or statement creates a substantial risk that the defendant might falsely incriminate himself" (CPL 60.45 [2] [a], [b] [i]; see CPL 60.45 [1]; People v Thomas, 22 NY3d 629, 646 [2014]). In this regard, we are guided by the principle that the voluntariness of an inculpatory statement is determined by looking at the totality of the circumstances under which it was obtained (see People v Anderson, 42 NY2d 35, 38 [1977]; People v Pouliot, 64 AD3d 1043, 1044 [2009], lv denied 13 NY3d 838 [2009]; see also People v Mateo, 2 NY3d 383, 413-414 [2004], cert denied 542 US 946 [2004]), and we give deference to the credibility determinations that are supported by the record as a whole (see People v Flemming, 101 AD3d 1483, 1484 [2012], lv denied 21 NY3d 942 [2013]; People v Button, 56 AD3d 1043, 1044 [2008], lv dismissed 12 NY3d 781 [2009]).

Here, State Police Investigator David Ferro testified at the Huntley hearing that when defendant arrived at a police station near New York City, he introduced himself to defendant, changed defendant's handcuffs, read defendant his Miranda rights from a preprinted card and asked defendant whether he wished to speak to the police. According to Ferro, defendant acknowledged

_____

    [2] Defendant's contentions pertaining to the factual sufficiency of his plea were raised for the first time in his reply brief and, therefore, are not properly before us in any event (see Matter of Claydon, 103 AD3d 1051, 1054 [2013]).

that he understood his Miranda rights and that he wished to speak to the police. Defendant was then placed in Ferro's patrol vehicle in the right rear seat, next to Ferro, while another officer drove. Ferro testified that he had informed defendant that his arrest was about the robbery, to which defendant responded by nodding his head, and asked defendant "if he wanted to give his side of the story." Defendant agreed to provide a statement to the police but indicated that he would like to "be out on bail." Ferro informed defendant that he "would call the [District Attorney's] office to let them know [that] if he remained cooperative, [he would] have no problem making a call and asking for a bail recommendation." Upon arriving in the interview room, Ferro had defendant read out loud and initial Miranda warnings printed on top of the form used to record defendant's written statement, which was transcribed by Ferro. According to Ferro, defendant did not ask to speak to an attorney. While defendant made his statement, Ferro asked defendant questions and, upon finishing his statement, Ferro read the statement to defendant, who reviewed the statement, initialed each page and signed the statement.

In view of the foregoing circumstances, we find that County Court correctly determined that the People established beyond a reasonable doubt that defendant's written statement was given voluntarily and that defendant knowingly, intelligently and voluntarily waived his Miranda rights. Indeed, there is no evidence in the record to suggest that the police acted in "an unduly coercive or threatening manner" or that their conduct undermined defendant's choice regarding "whether or not to provide a statement" (People v Pouliot, 64 AD3d at 1045-1046 [internal quotations marks and citations omitted]; see CPL 60.45 [2] [a]). Furthermore, defendant's past experience with the criminal justice system also supports the determination that he knowingly and voluntarily provided the statement to the police (see People v McLean, 59 AD3d 861, 863 [2009], affd 15 NY3d 117 [2010]; People v Ward, 241 AD2d 767, 769 [1997], lv denied 91 NY2d 837 [1997]). Finally, while Ferro informed defendant that he would call the District Attorney's office and make a bail recommendation if defendant remained cooperative, Ferro neither promised defendant that he would be released on bail, nor gave any assurance to defendant that he would not be prosecuted or

that he would receive lenient treatment; therefore, there was not a substantial risk that defendant would falsely incriminate himself (see CPL 60.45 [2] [b] [i]; People v Williamson, 245 AD2d 966, 968 [1997], lv denied 91 NY2d 946 [1998]).

Finally, we perceive no circumstances in this case that would warrant a reduction in the sentence as harsh or excessive. After taking into account defendant's prior criminal history and the violent nature of the crime, County Court was within its discretion in imposing a sentence only two years beyond the statutorily permitted minimum sentence (see People v Brabham, 126 AD3d 1040, 1044 [2015], lvs denied 25 NY3d 1160, 1171 [2015]).

McCarthy, J.P., Egan Jr. and Lynch, JJ., concur.

ORDERED that the judgment is affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court